AARON BISSELL, Appellant, v. CHARLES BALCOM,
RESPONDENT.

*Statute of Frauds—Part delivery—Payment on account.*

Where the Plaintiff and Defendant made a verbal agreement for the sale of cattle, at a price exceeding fifty dollars, without any actual delivery or payment of any part of the price, but the next day the Plaintiff called on the Defendant for a payment to bind " the bargain, so that there will be no chance to back out," and for that purpose the Defendant makes a payment of part of the price, the contract is valid and binding, within the Statute of Frauds of this State.

The requirement that the buyer shall, *at the time,* pay some part of the purchase-money, in our Statute is satisfied. In such case, the sale will be deemed made when the money was paid; for then the minds of the parties meet in the fact of sale, and a mutual intent is expressed to make it then valid and binding, according to the tenor of the previous oral treaty. Where a present absolute sale of cattle is verbally made, without actual delivery of the cattle to the buyer, but the seller agreed that the cattle may remain on his land, and be taken from time to time by the buyer, as he wants them to butcher, and the buyer gives directions to the seller to remove the cattle to another field for pasture, and he does so, and afterwards the buyer directs another removal, which is also complied with by the seller :

Query 1st. Is not this a sufficient delivery and acceptance of the cattle to satisfy the requirements of the Statute of Frauds? 2d. Is not the possession thereby in judgment of law changed, the seller holding the cattle thereafter not as owner, but as the agent and bailee of the buyer ?

APPEAL from order of the Supreme Court in General Term, in the Seventh District, setting aside a verdict and awarding a new trial.

The action is brought to recover the price of fifteen head of cattle, alleged to have been sold and delivered by the Plaintiff to the Defendant, on the 29th of August, 1861.

The answer put in issue every material allegation in the complaint, and alleged that at the time of the alleged sale the Plaintiff was to feed, pasture, and take good care of the cattle, and

deliver them to the Defendant on or before the first of December, 1861, and that he did not take such care, but by his negligence several of the cattle were lost and drowned, to the damage of the Defendant, &c., which he will recoup, &c.

The Plaintiff testified, among other things: " I sold the Defendant, in the fall of 1861, fifteen head of two-year-old cattle; fourteen of them were steers; he was to pay me for them $290. He paid me $5 to apply on the cattle; there remains $285 due, which was to be paid on the 1st of December, 1861. . . . . . . . About the last of August, 1861, the Defendant came to my house, and wanted to know of me if I had sold my steers; I told him I had not. He wanted to know what I asked for them; ·I told him my price. He told me what he would give me; I told him I would split the difference with him. He said he would give me what he offered, and no more; and I finally agreed to accept his offer, which was to give me $290 for the fifteen head of cattle. He told me he was butchering at Painted Post, and that he wanted the cattle, so that when cattle got scarce he could come and get them; and that if, at any time before the first of December, he wanted them, or any of them, to butcher, he could come up and get them. He asked me if I wanted any money to bind the bargain; I told him I did not care about it at that time. He said, ' If any one asks you if the cattle are sold, tell them you have sold them to me. And if any one asks me, I will tell them I have bought them.'

" Something was then said about keeping the cattle, and I told him they might run there until the first of December, if he saw fit to let them run there until that time. He said he bought them expressly that he might get them whenever he wanted them, as he was in the butchering business. . . . . . The cattle at the time were all on the plains, about fifty or sixty rods from us. . . . . . Defendant had before that day seen the cattle. . . . . The price was to be paid on the first of December. If he wanted any of them to butcher before the first of December, he was to· come and take them. . . . . .

" The next day, or next day but one, I was at the Post, and he

wanted to know if I had turned the cattle on the flats. I told him I had not, but would do so that night; and I did turn them on the flats after I went home. Then I told him I was in want of some money. He said, ' You are not afraid I am going to back out ?' ' No,' said I, ' but it is best that we bind the bargain, so that there will be no chance to back out.' . . . . He said he could not let me have five dollars, but he would let me have three dollars, and two weeks from that day would pay the other two, which he did."

He further testified to the subsequent direction by the Defendant to remove a part of the cattle from the flats back to the plains, with which the Plaintiff complied; and that, in the last of September or first of October, the several cattle which remained on the flats were carried off by a flood and drowned. There was much other evidence, but the testimony is sufficient on the part of the Plaintiff to present the question discussed, in the opinion of the Court.

The Defendant moved for a nonsuit, on the ground that the contract was void by the Statute of Frauds, inasmuch as there was no note or memorandum in writing, no delivery of any part of the property bargained for, and no part of the purchase-money was paid *at the time ;* that the transaction proved was not a present sale, but an executory agreement for a future sale and delivery; and Plaintiff had not shown performance, or tender of performance, but, on the contrary, had shown that he was unable to deliver at the time stipulated.

The motion was denied, and the Defendant excepted.

The Defendant then gave evidence in regard to agreement, the condition of the cattle, the loss thereof, and evidence bearing on the question of negligence in the case of the cattle. He in no respect qualified or contradicted the testimony of the Plaintiff in respect to what took place when the money was paid to bind the bargain, or to his giving directions to change the pasture, or to the agreement that he was at liberty to go at any time and take the cattle as he wanted them for butchering.

The Defendant's counsel again insisted, and requested the Judge

to charge, that there was no delivery of the cattle at the time the bargain was made, and nothing was done which would constitute a delivery, and that the bargain was void by the Statute of Frauds.

The Court refused so to charge in either respect, and held that whether there was or was not a delivery and acceptance, and subsequent bailment, were questions of fact for the jury under the evidence; to which the Defendant excepted. The Court submitted the question to the jury, whether the bargain was an executory agreement to sell the cattle and deliver them at a future day, in which case he charged their verdict must be for the Defendant; or the transaction was a present sale and delivery of the cattle by the Plaintiff to the Defendant, and the Plaintiff was only to keep them afterwards as bailee of the Defendant; in which case the Plaintiff was entitled to recover, unless the cattle, or some of them, were lost through the Plaintiff's negligence. To this the Defendant excepted.

The Court charged, in respect to negligence, that the Plaintiff, as bailee, was only bound to take such care of the property as careful and prudent men usually take of their own property. And to this the Defendant excepted.

The jury found a verdict for the Plaintiff. On the hearing of exceptions, in General Term, the Court ordered a new trial, on the sole ground that the agreement was void by the Statute of Frauds. The Plaintiff stipulated and appealed to this Court.

*Geo. B. Bradley* for Appellant.

*C. Rumsey* for Respondent.

WOODRUFF, J.—The jury have found, in this case, that the transaction between the Plaintiff and Defendant was not a mere executory contract to sell and deliver at a future day.

There was evidence to justify the submission of that question to the jury, and sufficient to sustain their finding. The Plaintiff's testimony is in terms to an absolute sale. A complete meeting of the minds of the parties upon the fact of sale, and the price to be paid, and the right of the Defendant to take the cattle when he saw fit, and to this there is no contradiction. The Defendant's

testimony on this point corroborates the Plaintiff. Nothing whatever remained to be done by either party to entitle the Defendant to claim the property, or the Plaintiff to demand the price at the expiration of the agreed credit. The Plaintiff did not even reserve his lien on the cattle for the price.

The Defendant was entitled to take away the cattle from time to time, as he might wish to butcher them, and without further leave or license from the Plaintiff. The Plaintiff was not even bound by the agreement to make a delivery; the Defendant was to "come and get them." This is several times reiterated in the testimony, and also in a more decisive form. "If he wanted any of them · to butcher before the first of December, he was to come and take them."

The parties declared their understanding of it at the time as an actual sale. The jury were warranted by the evidence in finding this; it is in direct accordance with uncontradicted testimony. This constituted a present sale of the property at the common law, by which title passed to the purchaser, and by which the vendor's right to the purchase-money was perfect.

To the binding legal effect of such a sale, at the common law, delivery of the property is not necessary to vest the title in the purchaser, or to place the property at his risk; nor is it necessary that actual payment of any part of the price should be made. On the contrary, the sale may be perfect, the title pass, and the property be at the risk of the purchaser, and yet the vendor retain the possession, and have complete right to retain the possession, until the price is paid, and to compel payment before delivery.

Here the agreement went further: it waived all lien for the price, and left the cattle entirely at the pleasure of the purchaser, to take and kill whenever he saw fit. Upon this finding of the jury we are, therefore, to treat this transaction as a present absolute sale at the common law, by force of which the title of the cattle vested in the Defendant; the right of the Plaintiff to have the purchase-price at the expiration of the term of credit complete. And the cattle remained on the Plaintiff's land, subject to the Defendant's right to take them at his pleasure; but meantime to be at

his risk.    The Judge submitted to the jury the further question, as an alternative to the other, viz., whether this transaction was a present sale and delivery of the cattle to the Defendant; and the jury have found that it was.    They thus deny that it was an executory agreement for a future sale.    They affirm that it was a present sale, and also that it was accompanied by a delivery of the cattle to the Defendant.    The finding that it was an absolute sale was supported by the evidence, as I have shown.    If the evidence of delivery was such as would warrant the submission of the question of delivery to the jury, and would justify their finding that although the cattle remained for pasture on the land of the Plaintiff, he was to keep them as bailee of the Defendant, his subsequent directions from time to time to change their place of pasture indicating his acceptance thereof, then not only all the requisites to a complete sale at the common law were complied with, but the Statute of Frauds was fully satisfied.

The Court below, in setting aside the verdict, have not regarded this finding of the jury, that there was an actual delivery satisfying the requirements of the Statute of Frauds, as warranted by the evidence, and have held that the motion for a nonsuit should have been granted.    The cattle were agreed to be at the Defendant's disposal, with authority to take them at his pleasure.    His directions as to the place where they should be pastured were given from time to time; and the Plaintiff submitted to his authority, and obeyed his instructions in the keeping of the cattle, and as to driving or placing them where he directed.

The argument is by no means trivial, that the acts of the Plaintiff in removing the cattle to the place designated by the Defendant, and the Defendant's assumption of dominion over them by directing their removal, submitted to by the Plaintiff, warranted the jury in finding delivery and acceptance; that although the cattle remained upon the premises of the vendor, in his charge and keeping, yet that he no longer held them as owner, and had no control over them, except as bailee of the purchaser; that the character in which he held possession was changed; and therefore, as in Marvin *v.* Wallace (37 Eng. L. & Eq. R. 6), the jury were

justified in finding delivery and acceptance. In that case the sale of a horse was made, and without any actual delivery to the buyer, the vendor asked the buyer to lend the horse to him for use, for two or three weeks, and the buyer consented, and the horse was retained and used by the vendor accordingly. This was held to change the character of the holding by the latter, and to amount to a delivery and acceptance; as also in Elmore *v.* Stone (1 Taunt. 458), where, on an oral sale of two horses, the buyer requested the vendor to keep the horses at livery for him, to which the vendor consented, and thereupon removed the horses from his sales stables to another stable, where he kept horses at livery. This was held to amount to delivery and acceptance, under the Statute of Frauds.

But without pursuing this branch of the subject, or expressing any opinion thereon, there is another ground upon which the contract is valid under the Statute of Frauds, and entitled the Plaintiff to retain his verdict, and upon which the nonsuit was rightfully denied.

The sale was a present sale, valid at the common law. The Statute of Frauds requires, where the price of the property is fifty dollars, one of three requisites to a legal sale: 1st. That there shall be a note or memorandum in writing, subscribed, &c.; or, 2d. That the buyer accept and receive part of such goods, &c.; or, 3d. That "the buyer shall at the time pay some part of the purchase-money."

The motion for a nonsuit, and the order appealed from, proceed upon the ground that neither of these three requisites were complied with. There was no writing; that is certain. I do not deem it necessary to add anything to what I have said as to delivery and acceptance.

But upon the effect of the transactions of the day following the first oral treaty for the sale, particularly described by the witnesses, I think the decision of the Supreme Court was erroneous. The testimony stands uncontradicted, that on the day when the parties first met and orally agreed to the terms of sale, the Plaintiff was asked by the Defendant if he wanted any money to bind

the bargain, and he said he did not at that time. This plainly indicated that they were then conscious that what had been done was not legally binding. That it rested in their confidence in that sense of honor, influenced by which men often say, "My word is as good as my bond."

The next day, or day but one afterwards, the parties had an interview; then the Plaintiff had changed his mind, and frankly told the Defendant that he thought it best that the bargain should be made legally binding, thus: "Then I told him I was in want of some money. He said, 'You are not afraid I am going to back out?' 'No,' said I; 'but it is best that we bind the bargain, so that there will be no chance to back out,'" &c.; and thereupon three dollars was paid, and, at a subsequent day, two more.

Here is a distinct, intelligent reference by both parties to the negotiation of the previous day; a recognition by both of its want of binding force or validity, because no part of the stipulated price was paid; a declared intent to make the bargain valid and binding, assented to; a request for the payment of the money for that purpose, and a payment in compliance with that request.

I do not think it necessary, in order to sustain the verdict in this case, to say that the words "at the time," introduced by the revisers in this section of the Statute of Frauds, have no meaning, or can be disregarded; nor to say that every payment on account of a previous oral agreement for a sale, operates per se, and necessarily as a reiteration and affirmance of that oral agreement.

But the latter conclusion by no means abrogates those words in the Statute; and the argument is plausible, at least, that where the parties have made such an agreement complete and operative in all respects but for the Statute, and afterwards one offers payment on that contract, his act is an offer to enter into the relation and obligation which the terms thereof are apt to create, and of part performance of its duties; and if the other accepts the payment on the contract, his act is a then present declaration or affirmation of his assent to the conditions of the agreement, and an acceptance of its performance.

At that very time the minds of the parties do actually meet in the fact of sale, and then there is a bargain made or adopted, and *at that time* part of the purchase-price is paid. Before that time there had been treaty and words of agreement, but having no legal force. Now, by plain reference, though not by recital, the agreement is re-enacted. The terms are present in the minds of the parties, and are affirmed by payment and acceptance on account thereof.

This view of the subject does not abrogate the words, "at the time" of the agreement. The agreement, as originally expressed and assented to, is not binding. The Statute declares it void, because no part of the price was paid, and so the Statute has full and complete operation upon it. The vendor is not bound, the title has not passed, the property remains liable to execution against him, and all the evils the Statute intended to remedy by declaring that a mere verbal sale shall not be valid are obviated or prevented. And, moreover, if those words were not found in the Statute, it might be claimed that a subsequent payment of a part of the price not only made the sale complete, but retroacted to make the agreement valid and binding ab initio, and according to all the legal and incidental effects which would pertain to it had it been originally binding.

Now, according to the argument above suggested, the original treaty has, by force of the Statute, no legal operation. It is competent, nevertheless, for the parties to make the purchase and sale, and to make such purchase and sale upon precisely the same terms and conditions as were expressed in such previous bargain. This may be done by reference thereto; and payment accepted on account thereof may be deemed a reproduction of all those terms and conditions in the minds of the parties,—a meeting of those minds in their present mutual assent thereto, and a compliance with the Statute by payment and acceptance of part of the price. Then there is a present, and not merely a past agreement of sale, and payment "at the time" of part of the price. Thenceforward the agreement of sale may operate and be effective. This reasoning neither does violence to the Statute, nor ab-

rogates or disregards the words thereof. And it is in harmony with the intent to prescribe and insist upon the Statute requisite to give it validity, and to remedy the evils against which the Statute was intended to guard. The present case, however, does not require that this construction of the Statute should be affirmed in order to sustain the verdict of the jury.

It cannot be denied that although the parties had not in the first instance made a valid agreement, they had a right and were fully competent to make one. If they were satisfied with the terms to which they had before assented, it was wholly unnecessary that they should change them in any particular. It was surely enough that, with avowed consciousness that they were not yet bound, they should mutually agree to a sale, and, for the purpose of giving it complete legal validity, do just what they believed to be, and what the Statute declares to be, indispensable. All this was done in the present case.

Both actually indicated their knowledge that the bargain theretofore lying in words did not bind them. They both in terms referred to that bargain as a transaction the import of which was in their minds.

The clear intent and purpose now to enter into such transaction as should bind each, according to the terms before assented to, was expressed. For that purpose money was asked, and for that purpose money was paid.

Could this transaction have borne any other character, or been any more intelligible, or of any greater legal effect, if the Plaintiff on that occasion had in words said to the other, " We yesterday agreed, I to sell, and you to buy, my fifteen head of cattle, then in our view feeding on the plains," &c., recapitulating the precise bargain. "We are both aware that that agreement bound neither of us, because no part of the price was paid. I propose to sell the cattle to you upon those terms, and that you should pay me a part of the price," to which the Defendant replied, " I assent," and thereupon makes payment.

No sensible distinction can be pointed out between such a transaction and that in which the parties did engage, with ex-

press consciousness that the former treaty did not bind them, and with the expressed intent to become bound to the purchase and sale.

When the Plaintiff went to the Painted Post, on the day last referred to, it may be assumed (irrespective of the question of the sufficiency of the delivery, which is above alluded to without expressing any opinion) that although the parties had each assented to the sale, there was no binding agreement, because the Statute was not complied with. They desired and intended to make a valid sale.

Either of these things might be done : an agreement might be reduced to writing, in the terms of the previous oral treaty ; or, 2d, actual delivery of one or more of the cattle might be made and accepted ; or the parties might manifest their assent to a sale upon those terms, and pay a part of the price. This is not doubtful, and in either case the sale would be binding.

Who shall prescribe the precise form of words in which such mutual assent to the sale shall then be declared ? The form is not of the substance of the matter. It is enough that the language and acts of the parties clearly express it ; and it may be done as well by reference to it as then present in the mind and memory of both, as by the idle form of recital or repetition.

In my opinion, the money paid in this case, on the occasion last referred to, was a payment of a part of the price at the time of the agreement, within the only reasonable meaning and intent of the statute.

I think, therefore, that the order granting a new trial should be reversed, with costs, and the Plaintiff should have judgment upon the verdict, with costs.

JOEL TIFFANY,
State Reporter.