## COLTON v. RAYMOND.

(Circuit Court of Appeals, Second Circuit. February 25, 1902.)

No. 116.

1. STATUTE OF FRAUDS—SALES—PART PAYMENT OF PRICE.

Under the statute of frauds of New York, which provides that a contract for the sale of goods, where no note or memorandum in writing is made, shall be void unless the buyer shall receive some part of the goods, or "shall at the time pay some part of the purchase money," as construed by the courts of the state, in order that the receipt by the seller of a part of the consideration for goods, after the time when a verbal contract for their sale was made, shall render the contract valid, there must be, at the time of such payment and receipt, such action taken by the parties as amounts to the making of a new contract, either by the making and acceptance of the payment for the expressed purpose of complying with the statute and making valid the contract, recognized as previously void, or by substantially restating, reaffirming, and renewing its terms; and a delivery of such part of the consideration by the buyer, with the statement that it was "in compliance and fulfillment of the trade that we made" on a day stated, and the acceptance of the same by the seller in silence, does not amount to a renewal of the prior contract, or the making of a new one, but at most is an implied recognition of the validity of the former contract, and the payment is not made "at the time" within the statutory exception.

2. SAME—SUBJECT OF SALE—OFFICE OR AGENCY.

An office involving fiduciary duties or an agency in which the delectus personæ is the essence of the relation cannot be the subject of a sale or assignment; nor is an oral agreement to resign such an office or agency as part of the consideration for a promise by the other party a contract for the sale of "goods, chattels, or things in action," within the meaning of the New York statute of frauds, so that the delivery of such resignation will amount to a part performance to bind the other party.

In Error to the Circuit Court of the United States for the Southern District of New York.

A. Walker Otis, for plaintiff in error.

Wm. B. Hornblower, for defendant in error.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

WALLACE, Circuit Judge. The plaintiff in error, who was the plaintiff in the court below, upon the trial of the action excepted to the rulings of the trial judge in directing a verdict for the defendant, and the principal assignments of error are addressed to that ruling. The case has been before this court on a former occasion upon a writ of error by the defendant from a judgment for the plaintiff entered upon the verdict of a jury, when the judgment was reversed upon the ground that the contract for breach of which the action was brought was invalid by the statute of frauds. The opinion is reported in Raymond v. Colton, 43 C. C. A. 501, 104 Fed. 219. Upon the present trial the facts proved were substantially those which were recited in that opinion, but some additional evidence was introduced in

behalf of the plaintiff, which will be referred to hereafter. Briefly stated, the agreement proved was one by which the plaintiff was to dispose of his interest in the concern of Vantine & Co., and the defendant was to pay him therefor in goods of the concern.

Vantine & Co. was a joint-stock mercantile association, with a capital stock divided into 2,500 shares, of which the plaintiff was the owner of 625 shares, and the defendant the owner of the remaining shares. Its business was carried on at New York and in Japan. The plaintiff was vice president and general manager of the concern, having a salary of $10,000 per annum as vice president. His brother was the general manager of the concern in Japan, and his father was a nominal shareholder and a director. The defendant was the president. The plaintiff had pledged his 625 shares of stock to the defendant as collateral security for the payment of his promissory note to the defendant for the sum of $165,000, with interest from January 1, 1897. He was also indebted to the concern in the sum of $12,000. Although the concern was, in legal effect, a corporation, its business had been conducted by the parties as though it were a partnership in which the plaintiff had a one-fourth interest and the defendant a three-fourths interest. The agreement grew out of friction between the parties in their business relations, and was made August 3, 1898. The evidence in respect to it authorized the jury to find that the plaintiff on his part undertook to "get out," and deliver to the defendant his resignation as vice president and managing agent and the resignation of his brother; and the defendant undertook to pay him therefor the value of his interest in the concern, less the amount of his note to the defendant and his indebtedness to the concern, such interest to be ascertained as of January 1, 1898, from the books of the concern. The evidence also authorized the jury to find that it was understood by the parties that the agreement was to be regarded as final, but without prejudice to further negotiations for some other adjustment of their differences. The evidence also authorized the jury to find that such negotiations took place, but on August 15th the plaintiff terminated them by an interview, at which he handed to the defendant the resignations "in compliance and fulfillment of the trade that we have made," and stated that he wanted the defendant to give him his quarter interest in the business, as he had agreed, and that the defendant received and retained the resignations.

In our former decision, in referring to the agreement, we characterized it in the opinion in this language:

"All that the plaintiff had to sell, and all that the defendant could buy, were the plaintiff's shares in the association. The plaintiff could not sell, nor could the defendant buy, the directorships of the association. In legal effect, the agreement was one for the barter or exchange of the shares in the association for the goods, the defendant being the buyer of the shares, and the plaintiff the buyer of the goods."

The principal question considered in that opinion was whether the contract was void under the statute of frauds, or whether, though an oral contract, it was withdrawn from the operation of the statute because the plaintiff had "at the time" paid some part of the purchase

consideration. The question was not considered whether the contract was withdrawn from the operation of the statute, because the defendant had accepted and received some part of the property which was the subject of the sale.

As the statute of frauds is construed by the courts of this state, a payment made subsequent to the time of the original contract is to be deemed made at the time of the contract, if there was such a reaffirmation of the prior contract as to constitute a new contract. The majority of the court regarded the decisions of the state courts as holding that the reaffirmation is one which is made by express terms, and not one which arises from the making and the reception of the payment upon the tacit or implied understanding that the contract formerly made is in force; in other words, the majority adopted the language of the court of appeals in Jackson v. Tupper, 101 N. Y. 519, 5 N. E. 65, and held the payment ineffectual to validate the contract, because "there was no restatement of the terms of the prior oral agreement when the payment was made, and no express recognition thereof; nor was the payment made for the avowed purpose of binding the prior bargain."

To differentiate the present case from the former one, the plaintiff gave additional evidence in respect to the conversation which took place between the parties at the interview on August 15th. He testified that in speaking of the agreement at the interview he mentioned it as the agreement made August 3d. He narrated that interview as follows:

"I said: 'Mr. Raymond, I am going to give you my resignation, my father's resignation, and my brother's resignation, to take effect to-night at six o'clock, in compliance and fulfillment of the trade that we made on August 3d. I want you to give me my quarter interest in the goods, less the notes, as you promised to August 3d.' He said, 'Charlie, won't you regret it?' I said, 'No.' I think that closed the talk at that time."

He also testified that the certificate for the 625 shares had never been in his possession, but had always been in the possession of the defendant since it was issued. Further new testimony was given for the plaintiff by the witness Sproull, an attorney, who had been present when the contract of August 3d was made. This witness testified to a conversation with the defendant on August 19th, in which he stated to the defendant that the plaintiff had given up his resignation and his salary, and had made over to the defendant his stock, and asked the defendant: "Do you want anything further? Do you want an assignment of the stock?" And the defendant answered: "No, I have got them. He made them over. I can do as I please. * * * I want him to resign as trustee. When he has done that, I will give him his one-quarter interest in the concern in the shape of goods." Sproull then proposed to secure the plaintiff's resignation as trustee, and said to the defendant: "Colton, I know, will be willing to give it. I will report to him this conversation, and tell him that you will give him his interest in goods, and then he will give you his resignation as director and trustee." Sproull also testified that he communicated the request for the resignation to the plaintiff. It

was proved also that the plaintiff complied with Sproull's request by mailing to the defendant a resignation as trustee and director.

In directing a verdict for the defendant, the trial judge expressed the opinion that the contract was void by the statute of frauds, and that the evidence did not distinguish the case from the one previously considered by this court.

As the statute is a New York statute, it is the duty of this court to adopt the construction put upon it by the highest courts of this state in respect to the meaning of the words "at the time" of the· contract. The statute declares any contract "for the.sale of goods, chattels, or things in action" void, in the absence of a note or memorandum in writing, unless the buyer shall "accept and receive some part of the goods, or the evidences, or some part of such things in action," or "shall at the time pay some part of the purchase money." The former statute did not specify the time when either the goods were to be accepted or received, or a part of the purchase money was to be paid. The history of the legislation is given in McKnight v. Dunlop, 5 N. Y. 537, 55 Am. Dec. 370, where the court adverted to a decision of the supreme court of Massachusetts in Thompson v. Alger, 12 Metc. 435, where the meaning of the New York statute was considered. The Massachusetts case was one in which the court, speaking of the original verbal agreement, used this language:

"Had nothing further occurred, this verbal contract might have been restricted to that point of time. But such was not the case. On the contrary, these parties met again, and further declared upon the subject. and they engaged that the defendant should on that day pay to Stone $400 in part payment of the purchase money; and, if the defendant would thus pay that sum, that Stone would have the stock transferred, so that the defendant could have it the next time he should be in Hudson. Here was a new and further negotiation of the parties, a renewal of the contract, with a new agreement as to the time of the transfer of the shares. At the time of the making of this latter agreement,—which is the one that the plaintiff seeks to enforce,—the $400 was actually paid as a part of the purchase money of these shares, which, by this agreement, were to be conveyed. These facts present a case of payment, which, we think, will bring this case within the third class of exceptions from the operation of the statute of frauds."

In McKnight v. Dunlop, referring to that decision, the court said:

"If the contract is not in law deemed to be made until the part payment of the purchase money, and a previous oral agreement is merely referred to to ascertain the terms of the subsequent valid contract, the decision of the supreme judicial court of Massachusetts can be regarded as sound."

The subsequent decisions of the courts of New York follow this interpretation of the statute. In Bissell v. Balcom, 39 N. Y. 275, the parties had made a verbal agreement for the sale of cattle at a price exceeding $50, without any actual delivery or payment of any part of the purchase price, but the next day the plaintiff called upon the defendant for a payment to "bind ·the bargain, so that there will be no chance to back out," and for that purpose the defendant made a payment of a part of the price. After referring to the conversation which took place at the time of the payment between the parties, the court said:

"Here is a distinct intelligent reference by both parties to the negotiation of the previous day; a recognition by both of its want of binding force or validity, because no part of the stipulated price was paid; a declared intent to make the bargain valid and binding, assented to; a request for the payment of the money for that purpose, and a payment in compliance with that request."

In Hunter v. Wetsell, 57 N. Y. 375, 15 Am. Rep. 508, the contract (for the sale of hops) was made September 27th, and no portion of the purchase price was then paid. Subsequently the defendant paid the plaintiff $300 upon the purchase price,—$200 in November and $100 in December,—to apply on the hop contract. There was no proof of what was said about the hops. In deciding the case the court said:

"There is no proof of what was said about the hops or the contract when these payments were made. The evidence does not even show that the contract was mentioned or referred to. It is simply that the payments were made towards the hops."

After reviewing the authorities, the court used this language:

"The following points may, however, be regarded as established: (1) Where a contract of sale has been made, good at common law, but void under the statute of frauds, and the parties subsequently meet, and for the express purpose of then complying with the statute and making the contract valid, a payment is made by the purchaser upon the contract, at the request of the seller, such payment is made at the time of making the contract, within the meaning of the statute. (2) Where, in case of such a void contract, the parties subsequently come together, and substantially restate, reaffirm, and renew its terms, so as then and there, by the meeting of their minds, to make a contract, and then payment is made upon the contract, the statute is complied with."

This case subsequently came before the court of appeals a second time (84 N. Y. 549, 38 Am. Rep. 544), and the court said:

"In the case as now presented, the difficulty, fatal before, is claimed to have been obviated. There is proof of a restatement of the essential terms of the contract at the time of the delivery of the check for $200."

The court held the contract valid because payment was made at the time of such restatement of the terms of the contract.

These propositions have always been adhered to by the courts of New York. In Jackson v. Tupper, 101 N. Y. 515, 5 N. E. 65, where the payment was held insufficient to validate the contract, the court observed that the plaintiffs did not bring their case within these propositions, saying:

"There was no restatement of the terms of the prior oral agreement when the payment of May 1, 1880, was made, and no express recognition thereof, nor was the payment made for the avowed purpose of binding the prior bargain."

In the present case, treating the delivery of the resignations on August 15th as a payment made upon the contract of August 3d, it is not pretended that the payment was made for the purpose of validating the prior void contract. It purported to be made in execution of a valid prior contract, in the words of the plaintiff, "in compliance and fulfillment of the trade that we made on August 3d." Was there any

restatement of the substantial terms of the prior contract? The plaintiff said to the defendant: "I am going to give you the resignations in fulfillment of the trade that we made on August 3d. I want you to give me my quarter interest in the goods, less the notes, as you promised to August 3d." The defendant was silent, though, of course, by receiving the resignations he assented to the statements of the plaintiff. Nothing was said about the shares of stock, or as to the manner in which the plaintiff's interest was to be ascertained. It was understood, undoubtedly, that his interest was to be that as shown by the books of the company on the previous 1st day of January, viz., by ascertaining the inventory value of the assets and the state of the plaintiff's account with the concern on that day; but no mention was made of this substantial part of the prior contract. Nothing was said about the certificates for the plaintiff's shares then pledged to the defendant, and nothing about the cancellation or surrender of the plaintiff's note for which the shares were held as collateral. Nor was there any mention made of the vital and important conditions of the prior contract that the plaintiff was to "get out," or renounce his interest in the concern. Finally, throughout the interview there was merely a proposition or demand on the part of the plaintiff, a statement of what he proposed to do and wanted the defendant to do, and no verbal assent by the defendant. It seems preposterous to say that here was any restatement of the terms of the old contract. By implication they recognized that it was still existing, but they did not reassert its terms so as to agree upon a new one of essentially the same purport.

Did the subsequent conversation with Sproull on August 19th, and what took place pursuant to that conversation, amount to a payment at that time? If we treat the conversation as an interview between the defendant and the plaintiff himself, there are two reasons why it did not: (1) There was no restatement of the substantial terms of the contract, and (2) there was no payment of any part of the contract consideration. What was said by the defendant about the stock was merely his statement of what he conceived to be his rights in view of what had previously taken place. The resignation of the plaintiff's father as a trustee, or of the plaintiff himself as a trustee, was not a part of the consideration of the prior contract. The agreement was that the plaintiff should "get out," and hand in his brother's resignation and his own resignation as vice president and general manager. If in that conversation, or the previous conversation with the plaintiff, the defendant had stated that he would henceforth regard himself as the owner of the plaintiff's shares of stock, the circumstance would not have helped the plaintiff's case. The statute requires physical acts of delivery and acceptance, and words alone are useless. In the absence of any act of the defendant indicating an assumption of ownership of the shares, or of authority over them, what was said and what took place was of no importance. Shindler v. Houston, 1 N. Y. 261, 49 Am. Dec. 316; In re Hoover, 33 Hun, 555; Caulkins v. Hellman, 47 N. Y. 453, 7 Am. Rep. 461; Cooke v. Millard, 65 N. Y. 352, 22 Am. Rep. 619.

Upon principle, and logically, there can be no payment made at the time of the contract unless it is made as a part of the negotiations, or at the time when the negotiation is concluded; otherwise the statutory provision would be nugatory. If there is a new contract, in which the parties agree to reinstate a previous one for the purpose of validating it according to the statute, so that it is to take effect as a new agreement in substitution of the void one, and a payment is made at the time, the statute is satisfied. If they get together, and by words or implication say to one another, "We recognize that the bargain that we have previously made is not enforceable, but we are willing to stand by its terms upon the immediate payment of the purchase money, or a part of it," there is a new contract supported by a new consideration. But when they get together, and talk over a part of the terms of the original contract, but do not advert to some of the substantial conditions, and a payment is made, the old contract is not reinstated, but a new and different one is made, which, because of the payment, is valid within the statute. This contract may support an action for its breach, but it cannot support one for a breach of the original contract.

It has not been argued that there was an acceptance or reception by the defendant of "some part of the goods, or the evidences, or some part thereof, of such things in action," so as to bring the case within the other exception of the statute. In our former decision we pointed out that there could be no sale or purchase of the directorships or offices of the corporation, although the promise by the plaintiff to sell or deliver the resignations might be regarded as a part of the consideration of the defendant's promise. Neither could there be a sale of the agencies of the plaintiff and his brother. An office involving fiduciary duties, or an agency in which the delectus personæ is the essence of the relation, is not the subject of a sale or an assignment. Devlin v. Mayor, etc., 63 N. Y. 8; Arkansas Valley Smelting Co. v. Belden Mining Co., 127 U. S. 379, 8 Sup. Ct. 1308, 32 L. Ed. 246; Delaware Co. v. Diebold Safe & Lock Co., 133 U. S. 473, 10 Sup. Ct. 399, 33 L. Ed. 674. Nor do they fall within the terms of the statute of frauds. They are neither "goods, chattels, nor things in action." It is the reception or acceptance of some of these things, or the "evidence thereof" to which the statute refers. The statute has no application to the contract for the sale or the purchase of an agency, and it is immaterial whether such a contract is in writing or is not. The delivery of the resignations was merely an act evidencing the plaintiff's renunciation of all further participation in the business of the concern.

We conclude that the court below ruled correctly in directing a verdict for the defendant, and the judgment is therefore affirmed.