### KOEWING v. WILDER.

(Circuit Court of Appeals, Second Circuit.   March 3, 1904.)

No. 122.

1. SALES—CONTRACTS—REDUCTION TO WRITING—STATUTE OF FRAUDS—PART PAYMENT.

Plaintiff and defendant made two oral contracts, one for the sale of all the stock of the S. Company to defendant for $500,000, which was subsequently reduced to writing, and the other for the sale of 100 shares of the stock of the B. Company by defendant to plaintiff for $10,000, which was not reduced to writing.   *Held*, that in the absence of evidence that at the time the contract for the S. stock was reduced to writing and delivered the parties restated the prior oral agreement for the sale of the B. stock, and intended to validate the same as a part of the contract, the delivery and the performance of the contract for the sale of the S. stock did not constitute a payment of a part of the purchase money for the sale of the B. stock at the time, so as to take that contract out of the statute of frauds.

In Error to the Circuit Court of the United States for the Southern District of New York.

See 126 Fed. 472.

This cause comes here upon writ of error to review a judgment of the United States Circuit Court, Southern District of New York.   The judgment was entered upon a verdict in favor of the defendant below (who is defendant in error), which verdict was directed by the court at the close of plaintiff's case.   The action was brought to recover damages for the failure of defendant to transfer to plaintiff 100 shares of the stock of the Butterick Publishing Company at the price of $100 per share.   The answer set up the statute of frauds, and averred that neither the contract declared upon, nor any note or memorandum of it, was ever made in writing, nor did the plaintiff at the time pay any part of the purchase money.   The facts sufficiently appear in the opinion.

A. C. Sheussane, for plaintiff in error.

Herbert Noble, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above).   Inasmuch as the cause was disposed of at the close of plaintiff's proofs, his narrative of the transactions is to be taken as correct.   He was the only witness, except as to value of the stock.   This is his story:   He owned and controlled the entire capital stock of the Standard Fashion Company.   The defendant was vice president of the Butterick Company, and had expressed a wish to purchase the entire stock of the Standard Company.   A meeting took place between the parties early in January, 1900, at which defendant stated that a man named Hudson, who was secretary of the Butterick, was about to be dismissed, in which event 200 shares of its stock then held by Hudson would be called in by defendant, under an agreement which he had with Hudson; that, if plaintiff would make an offer of the Standard stock low enough to enable defendant and his backers to purchase it, he would let plaintiff have 100 shares of the Hudson stock.   Nothing was said at the time about prices.   The next day they met again, and in response to a question defendant stated that he meant that plaintiff should have the Butterick stock at par.   At that interview plaintiff

named no price for the Standard stock. Negotiations continued for a few days, until the minds of both parties met, January 10th, on the proposition that plaintiff would sell the entire stock of the Standard Company for $500,000, and an agreement to be employed by the But-terick Company for a stated period at $5,000 a year. Defendant at the time repeated his offer of the 100 shares of the Butterick stock. Both sides agreed to these terms, and it was arranged that a written contract should be prepared, defendant stating that he did not wish the matter of the 100 shares of Butterick to be incorporated therein, because he desired not to have that part of the agreement known to others, who might object. A written contract, dated January 15th, was prepared, which covered the sale of the Standard stock, but was silent as to any sale of Butterick stock. It was signed on January 22d. The plaintiff's testimony is:

"Eventually the contract was concluded on or about January 22d, and the first payment was made of $25,000. He handed me the first money with the remark, and it being again and again gone over by us, that the 100 shares of stock would be delivered to me for $10,000 as soon as he received them from Hudson, * * * and Mr. Wilder said again he would deliver me 100 shares for $10,000 as soon as he should get them."

Manifestly there was no contract, note, or memorandum signed, and the only question is whether within the terms of the statute the plaintiff, at the time the contract was made, paid any part of the purchase money.

The testimony indicates that there were two contracts between the parties—one for the sale of the Standard stock by plaintiff to defendant for $500,000, which was reduced to writing; the other for the sale of 100 shares of Butterick stock by defendant to plaintiff for $10,000. There was not a single contract to sell the Standard stock for $490,000 and 100 shares of Butterick stock. Whatever may have been discussed between the parties as to the terms of sale of the Standard stock must be considered as all merged in the written contract. Nevertheless it was open to the parties to make a contract for the Butterick stock, in which the execution of the contract for the other stock was named as a part of the consideration. And we agree with the proposition of the plaintiff that the words in the statute, "pay any part of the purchase money," are broad enough to cover any part of the consideration, whether it is money or not. The only question presented here is wheth-er the delivery of the executed Standard contract was made "at the time" the contract was made, within the meaning of the statute of frauds of the state of New York. That statute was discussed by this court in Raymond v. Colton, 104 Fed. 219, 43 C. C. A. 501, and Colton v. Ray-mond, 114 Fed. 863, 52 C. C. A. 382. It was there held that certain resignations were in part the consideration for a certain promise to purchase, and their delivery "a part payment of the purchase money." The contract in that case was made on August 3d, and the resignations were delivered on August 15th. There was considerable testimony as to what was said at the time they were delivered. This court held (on the first appeal) that "as there was no restatement or reaffirmation of the terms of the prior oral agreement between the parties at the time of the delivery of the resignations, except by implication, and as

they were not delivered for the express purpose of complying with the statute and validating the contract, it must be held that there was no part payment at the time of the contract, within the meaning of the statute as construed by the highest courts of the state." On the second appeal it was held that "a payment made subsequent to the time of the original contract is to be deemed made at the time of the contract, if there was such a reaffirmation of the prior contract as to constitute a new contract; * * * that reaffirmation is one which is made by express terms, and not one which arises from the making and the reception of the payment upon the tacit or implied understanding that the contract formally made was in force." And the court, in illustration of what is required, cited from Jackson v. Tupper, 101 N. Y. 519, 5 N. E. 66:

"There was no restatement of the terms of the prior oral agreement when the payment was made, and no express recognition thereof, nor was the payment made for the avowed purpose of binding the prior bargain."

It also cited from Bissell v. Balcom, 39 N. Y. 275:

"Here is a distinct intelligent reference by both parties to the negotiation of the previous day—a recognition by both of its want of binding force or validity, because no part of the stipulated price was paid; a declared intent to make the bargain valid and binding, assented to; a request for the payment of money for that purpose, and a payment in compliance with that request."

The opinion of this court in Colton v. Raymond concludes:

"Upon principle and logically there can be no payment made at the time of the contract unless it is made as part of the negotiations or at the time when the negotiation is concluded; otherwise the statutory provision would be nugatory. If there is a new contract in which the parties agree to reinstate a previous one for the purpose of validating it according to the statute, so that it is to take effect as a new agreement in substitution of the void one, and a payment is made at the time, the statute is satisfied. If they get together, and by words or implication say to one another, 'We recognize that the bargain we have previously made is not enforceable, but we are willing to stand by its terms upon the immediate payment of the purchase money, or part of it,' there is a new contract supported by a new consideration."

From these citations it is apparent that, in order to take an oral contract out of the statute of frauds by a subsequent payment, there must be an intelligent understanding by the parties of the existing situation, an intent to make their void contract valid, and a restatement at the time of payment in express language of all the terms of the old contract. Counsel for plaintiff in his brief concedes that at the time a part of the consideration is paid "the terms of the old void contract [should be] repeated, restated, renewed, reaffirmed, re-enacted, revived, readopted, and recognized as the terms of the contract which they were then making." The evidence falls short of this. The minds of the parties met on January 10th. At that time all the terms of both contracts were agreed to. There is nothing to indicate that at the subsequent interview, when the contract to sell Standard stock was signed and delivered, any new provisions were incorporated in either contract. There is nothing to show that the delivery of the signed Standard contract on that day was intended or understood by either party to be a payment to bind a bargain otherwise void, or anything else than a carrying out of the terms of the oral contract of January

10th. There is nothing to show that they both recognized that said oral contract was without binding force or validity, or that they restated its terms in order to substitute a new and valid contract in its place. The cause cannot be distinguished from the Colton and Raymond Case, where the resignations were delivered upon the tacit or implied understanding that the prior agreement was in force, and under the rule laid down in that case delivery of the signed Standard contract, without the slightest suggestion in the testimony that either side supposed it was necessary in order to bind a prior bargain, cannot be held to be a "payment at the time," which will take the case out of the statute.

The judgment is affirmed.