THOMAS-BONNER CO. v. HOOVEN, OWENS & RENTSCHLER CO.

(Circuit Court of Appeals, Sixth Circuit. October 3, 1922.)

No. 3601.

1. **Assignments ⬡19—Agency contract held not assignable.**

An executory contract of agency with a partnership, by which the partners contracted to devote their time and ability to the work, and which involved personal trust, confidence, and credit, *held* not assignable by the partnership to a corporation without consent of the principal.

2. **Assignments ⬡94—Assignee by invalid assignment not entitled to sue for breach of contract.**

A corporation to which a partnership assigned an executory contract, involving personal trust, confidence, and credit, by which it became agent for the sale of a machine, without the knowledge or consent of the principal, cannot maintain an action against the principal for refusal to supply machines, nor for breach of warranty of their merchantability.

3. **Appeal and error ⬡997(3)—Trial ⬡177—Request by both parties for directed verdict gives case to court, and its finding is conclusive.**

Where both parties in a federal court request a directed verdict on all the issues, without reservation, they thereby assume that there is no dispute of fact and submit the whole case to the trial court for its determination, and the finding of the trial judge must be sustained, if the conclusion of fact is supported by any substantial evidence.

4. **Judges ⬡32—Death of judge after submission of case; decision by judge succeeding to case.**

Where, on the death of a District Judge to whom a case had been submitted on motions by both parties for directed verdict, the case was duly assigned to another judge, before whom it was reargued without objection, and the issues submitted to him for decision, his decision on the motions had the same force as that of the original judge would have had, including decision of whatever question of fact was involved.

5. **Contracts ⬡316(1)—Continued performance waiver of breach.**

Continued performance of a contract by a partnership, and by a corporation to which it assigned the contract as an existing contract, the cor-

---

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

poration thereafter insisting upon its wish to carry out the contract, *held* a waiver of an alleged breach by the other party which occurred prior to the assignment.

In Error to the District Court of the United States for the Southern District of Ohio; John E. Sater, Judge.

Action at law by the Thomas-Bonner Company against the Hooven-Owens-Rentschler Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Irving A. Fish, of Milwaukee, Wis., and Edw. P. Moulinier, of Cincinnati, Ohio, for plaintiff in error.

Floyd C. Williams and Stanley Shaffer, both of Cincinnati, Ohio, (Shaffer & Williams, of Cincinnati, Ohio, on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. The parties were aligned below as here. In the year 1914 defendant, a manufacturer of machinery at Hamilton, Ohio, began to get out an automatic typewriter, by which a paper record, similar to that used in the player piano, was perforated by the operation of typewriter keys, from which record a theoretically indefinite number of successive reproductions could automatically be made—each in ribbon, typewritten form, as distinguished from carbon and other manifolding processes. In April, 1915, defendant was ready to market the machine. At that time the Thomas-Bonner Company was a partnership, composed of Mr. Bonner, who was an adjuster for a life insurance company, Mr. E. D. Thomas, who was a safety inspector for the same company, and Mr. Carl Thomas, who devoted his time generally to the business of the partnership, which, aside from the insurance business, was that of manufacturers' agents at Milwaukee, Wis. It was selling two articles in Wisconsin and Michigan, one of which was an adding machine.

On May 12, 1915, a written contract was made by which defendant appointed the Thomas-Bonner Company its sales agent for the Milwaukee district, defendant agreeing to deliver to the agent the number of automatic typewriters and accessories for which the agent should obtain orders, and to pay a commission of 25 per cent. on all accepted sales; also to furnish the necessary tools and parts for maintaining service to customers and carrying out the service guaranty free of charge; to do all advertising for the proper introduction of the typewriter and to furnish the agent with advertising literature and stationery for the conduct of the agency, without charge to the agent; to make collections on account of sales made by the agent; and to assist the latter in every way possible in the building up of a mutually profitable and satisfactory business. The Thomas-Bonner Company agreed to establish a suitable office or salesroom in Milwaukee for carrying on the district agency business, including the demonstration of the typewriter and accessories; to install therein at least two automatic typewriters and their accessories complete for demonstration purposes, paying defendant $450 for each machine; to make a diligent effort to effect sales, and "to devote his entire time to the work of and inciden-

tal to" the same; to instruct properly the persons designated by the purchaser to learn the operation and care of the machines; to care for, adjust, and make necessary repairs to the same, when called upon by the purchasers during the life of the guaranty (employing a suitable person therefor); to handle all detail and clerical work incident to the operation of the district office; and to conform to defendant's selling rules and prices, in default of which defendant was authorized to abrogate the contract. The Thomas-Bonner Company further expressly agreed to make at least six bona fide sales each month; defendant having the privilege, in the event of failure so to do, to cancel the contract upon 60 days' written notice. The contract was to remain in force from year to year, if the agent complied with the contract provisions, and in the event of disagreement between the parties the agent agreed to resell to defendant the two automatic typewriters to be purchased by the agent at the price it had paid for the same.[1]  Steps were promptly taken to carry out the contract, an agency office was established, the two typewriters bought by the agency, and two members of the copartnership attended defendant's school of instruction at Hamilton.

In June, 1915, the three original members of the firm, a fourth person, recited in one of the papers as then a member of the firm, together with a fifth person, who appears not to have been a partner, formed, under the laws of Wisconsin, a corporation under the same name as the partnership, for the purpose of carrying on the business as manufacturers' agents at Milwaukee, and to this corporation, on June 26, 1915, the four persons referred to as copartners sold and transferred the agency contract in question, together with all other contracts at that time held by the partnership and all its personalty generally. The corporation thereafter carried on the business of the former copartnership, including the performance of the agency contract here in question, but entirely without knowledge by defendant of such change to corporate organization until apprised thereof by this suit, which was begun June 14, 1916. Meanwhile the agency had experienced great difficulty and had incurred much expense in endeavoring successfully to operate the machines, which were found to require replacement or substitution of parts, and in some cases changes in the method of manufacture. Although obtaining a considerable number of prospective purchasers, plaintiff did not succeed in making any effective sales. Defendant accordingly canceled the contract as of February 1, 1916. In this suit, as now presented, the successor corporation seeks damages for breach of an asserted implied warranty of merchantability of the machines. Defendant denied the warranty, and sought to justify its cancellation of the contract by the failure of the agent to make the sales agreed to be made, as well as to devote the entire time of the agents to the business of selling the machines and otherwise.

At the close of the testimony each party moved for a direction of verdict in its favor, and the case was submitted to Judge Hollister, the

---

[1] The remaining provisions of the contract are not thought material to the disposition of the case.

presiding judge, for decision. Judge Hollister died before the case was decided, and his colleague (Judge Sater) took charge of the case; Judge Hollister's successor being disqualified. The case was there-upon argued before Judge Sater, who, on consideration of the testimony and exhibits presented on the trial before Judge Hollister and the arguments made before Judge Sater, reached the conclusions that plaintiff was not entitled to recover on account of any breach of the contract subsequent to the assignment, for the reason that the contract was not assignable, because involving personal credit and confidence reposed in the members of the partnership, and that there was no breach of the contract previous to the assignment creating a right of action in the partnership. Judgment was accordingly entered for defendant.

Plaintiff contends that the contract was assignable; that a breach of the contract by defendant had already occurred when the assignment was made, entitling the partnership to recovery, under the undisputed evidence, of $10,800, being the agreed commissions on one year's minimum sales of 72 machines; that Judge Sater had jurisdiction to pass only upon questions of law raised by the record, and not on questions of fact; and thus that, if he was of opinion that the evidence was disputed, he should have ordered a new trial because of the sufficiency of plaintiff's evidence to sustain a verdict. The denial of the assignment, made by answer, put on plaintiff the burden of showing a valid assignment. Johnson v. Vickers, 139 Wis. 145, 149, 120 N. W. 837, 21 L. R. A. (N. S.) 359, 131 Am. St. Rep. 1046.

[1] In our opinion the agency contract was not assignable by the partnership to plaintiff corporation without defendant's consent. The contract was purely executory. The relationship between the partnership and the defendant involved personal trust, confidence, and credit. This conclusion is specifically supported by reference to the nature of the services already enumerated required of the partnership. Moreover, the presumption arising under an ordinary agency contract is specially confirmed by what occurred here. Defendant advertised for "17 big caliber men as sales managers," who must be—

"experienced in the organizing and handling of a selling force, made up in turn of high-grade men; * * * must have strong personality—be able to meet 'man to man' the biggest and best men of this country and put our proposition before them; * * * must be men of record—able to show results in the past. We don't want 'comers'—we want men of proved ability, * * * men who have some money, * * * simply that we consider men who have made money and saved money best suited for our work."

The Thomas-Bonner Company answered the advertisement, saying, among other things:

"We believe that our firm, though young, measures up to the standard of the German 42-centimeter. We can qualify on all four of your requirements."

The specific considerations which compel the conclusion that the agency contract involved personal trust, confidence in, and the credit of the individual partners are fully and persuasively elaborated in the opinion of Judge Sater (284 Fed. 377) and need not be repeated here.

Especially as applied to executory contracts involving personal trust,

confidence, and credit, the rule that "every one has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent," is firmly established, not only by the general law (in the absence of statute), but by the law of the state of Wisconsin. Arkansas Valley Smelting Co. v. Belden Co., 127 U. S. 379, 387, 388, 8 Sup. Ct. 1308, 32 L. Ed. 246; Delaware Co. v. Diebold Co., 133 U. S. 473, 488, 10 Sup. Ct. 399, 33 L. Ed. 674; Burck v. Taylor, 152 U. S. 634, 651, 14 Sup. Ct. 696, 38 L. Ed. 578; Colton v. Raymond (C. C. A. 2) 114 Fed. 863, 869, 52 C. C. A. 382, 383 ("an office involving fiduciary duties, or an agency in which the delectus personæ is the essence of the relation, is not the subject of a sale or an assignment"); Walker Co. v. New York Co. (C. C. A. 3) 241 Fed. 572, 154 C. C. A. 345; Johnson v. Vickers, 139 Wis. 145, 148, 120 N. W. 837, 21 L. R. A. (N. S.) 359, 131 Am. St. Rep. 1046; King v. Batterson, 13 R. I. 117, 120, 43 Am. Rep. 13, and cases cited. We find nothing to the contrary of this view in any of the other Wisconsin cases cited by plaintiff.

It seems clear to us that the plaintiff corporation was an entity distinct from the partnership agency, and thus not capable of substitution by assignment without defendant's consent. Assuming, for the purposes of this opinion, that the mere addition of a new partner after the contract was made would not necessarily change the identity of the agent (see Arkansas Co. v. Belden Co., supra, 127 U. S. at page 388, 8 Sup. Ct. 1308, 32 L. Ed. 246), yet here not only was the corporation in legal contemplation entirely distinct from the partnership, but it included at least one stockholder not in the original partnership. See Wooster v. Crane Co., 73 N. J. Eq. 23, 66 Atl. 1093, where a contract with a corporation was held not assignable to another corporation organized under the laws of another state, although the personnel of the two corporations was nearly identical; and, as affecting the principle involved, see the discussion in Hardy Implement Co. v. Iron Works, 129 Mo. 222, 31 S. W. 599. The corporation was not only organized to conduct business in addition to the agency contract here in question (the agency contract called for the entire time of the agents), but was subject to change of personnel at any time in respect both of stockholders and of officers, and had the power to dispense at will with the services of any one or more of the original partners with reference to any given work.

Nor are we prepared to accept plaintiff's contention that defendant supposed it was contracting with a corporation. While the name of the partnership, as given in the answer to defendant's advertisement before referred to and in the agency contract, as "the Thomas-Bonner Company," standing alone, would be consistent with a corporate organization, on the other hand, both the letter cited above, which refers to "our firm," as well as the contract, which describes the Thomas-Bonner Company as "composed of C. A. Bonner, E. D. Thomas, and C. R. Thomas," are inconsistent with the idea of a corporate organization, and we see no substantial force to the contrary in the fact that in the contract, which is upon a printed form, the agency is referred to as the second party (instead of parties), the possessive pronoun "his" being used in place of "theirs"; both uses being naturally ac-

counted for by the fact that the contract was upon a printed form containing the words referred to. It may also be noted that Bonner's letter to defendant's sales manager, written two weeks before the contract was made, speaks of E. D. Thomas as "my partner." Nor do we think the record indicates that defendant agreed that the covenant of supervision, or any other of the agency covenants, should be performed by Carl Thomas alone. The record, to our minds, is quite to the contrary. While it seems to have been understood that Carl Thomas would be the only one immediately to begin on the agency work, that partner, in reply to defendant's letter insisting in effect that the agency devote its entire time to the contract, wrote on June 15th (11 days before the assignment to the corporation) that not only was E. D. Thomas "arranging now to leave the insurance company and attend the July school at Hamilton, that he may devote his entire time to the Hooven automatic typewriter," but that "Mr. Bonner will, without doubt, shape his affairs that he may attend this school at the latest in three or four months." We find nothing in the record to indicate that defendant ever agreed absolutely to release Carl Thomas from connection with the agency contract. We understand the record to show only that when, on October 30th (after more or less dissatisfaction had arisen on both sides), plaintiff informed defendant that Carl Thomas would not be connected with the company after November 5th, stating that it was negotiating with a high-class Underwood district manager to manage the automatic typewriter sales, defendant replied that "it is not our intention to assume an arbitrary attitude, if you can show us that you can secure some one to handle the proposition we will be glad to have you continue."

[2] We think it indisputable that plaintiff could not have maintained an action against defendant for refusing to deliver further machines. Nor do we think plaintiff has a better right to recover for a breach of warranty of merchantability of the machines contracted to be furnished. Assuming, but not deciding, that the agency contract contained an implied warranty of such merchantability, we think the principle which forbids recovery for failing to deliver equally denies right of action for breach of warranty of merchantability. A guaranty is not assignable when there exists a relation of trust and confidence between guarantor and guarantee. King v. Batterson, supra. In other words, as applied to an action accruing to the plaintiff in its own right, recovery is sought on a warranty of quality of machines in which plaintiff could take no agency interest without defendant's consent. The case does not require us to decide what plaintiff's rights would be in a suit to recover on account of commissions actually earned, or for other services rendered or for disbursements made. Such a case is not presented. Nor are we required to decide whether the partnership, by making an invalid assignment of the agency contract, has deprived itself of the right, in its own interest, to maintain action for breach of the contract. See Kansas City Co. v. Illinois Co. (C. C. A. 8) 265 Fed. 108. Again, that question is not before us.

[3] We are constrained to think that the conclusion of nonassignability of the agency contract results, as matter of law, from the undisputed evidence in the case. If, however, as plaintiff contends, the

question of assignability involves one of fact, it becomes necessary to consider the extent of Judge Sater's jurisdiction. The rule is firmly established in the federal courts that, where both parties request a directed verdict on all the issues, without reservation, they thereby assume that there is no dispute of fact, and submit the whole case to the trial court for its determination. Beuttell v. Magone, 157 U. S 154, 15 Sup. Ct. 566, 39 L. Ed. 654; Williams v. Vreeland, 250 U. S. 295, 298, 39 Sup. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038; Minahan v. Gd. Trunk Western Ry. Co. (C. C. A. 6) 138 Fed. 37, 41, 70 C. C. A. 463; Mich. Copper & Brass Co. v. Chicago Screw Co. (C. C. A. 6) 269 Fed. 502. And it follows from this rule that the finding of the trial judge upon such submission must be sustained, provided the conclusion of fact is sustained by any substantial evidence.

[4] Judge Hollister had the right to determine whatever question of fact was embraced within the issues submitted, for there was at least substantial evidence tending to sustain the conclusion of non-assignability. On the death of Judge Hollister a new trial was imperative, unless Judge Sater, or some other judge, was empowered to decide the questions submitted to Judge Hollister, and, manifestly, if a new trial were granted, the same question was likely to arise thereon as on the first trial, and would possibly be submitted in the same way, by mutual motions to direct verdict. Moreover, it would be competent for the parties entirely to waive a jury upon the new trial. It was equally competent for them to agree that Judge Sater should hear and dispose of the case upon the testimony and exhibits already introduced and upon arguments of counsel, with the same authority which Judge Hollister had. The question is: Did the parties in effect so agree? That Judge Sater supposed such was his authority appears, not only from his opinion, in which he speaks of the case as reaching him "for disposition as a part of his [Judge Hollister's] unfinished work," but by the recital in the judgment that the case was—

"by the two judges of such district assigned to Judge Sater for decision, * * * no one having any interest in such case objecting to its disposition by Judge Sater. Thereupon the case was reargued by counsel for the respective parties hereto before Judge Sater, and the issues were submitted to him for decision."

Plaintiff's counsel concede in their brief that Judge Sater had the power to determine the questions of law arising under the mutual submission,[2] but say:

"There was no consent here to Judge Sater deciding anything but questions of law. * * * On the argument, the parties argued the matters which he had a right to decide, and they were not asked to waive and did not waive any right to trial by jury. * * * They argued law matters and submitted them to the successor judge. This, of course, could not be construed as a submission of disputed questions of fact."

Defendant's counsel contend that Judge Sater had the power to determine questions of fact involved in the mutual submission.[3] We do

---

[2] Citing Comp. Stat. 1916, § 1590, and Meldrum v. United States (C. C. A.) 151 Fed. 177, 183, 80 C. C. A. 545, 10 Ann. Cas. 324.

[3] Relying upon N. Y. Insurance Co. v. Wilson, 8 Pet. 291, 303, 8 L. Ed. 849.

not understand that plaintiff's counsel intend to raise a question of veracity, as distinguished from a legal conclusion, as to the fact of such submission as the judgment record recites, and such argument as was made thereon.

We are disposed to think that, if the recitals in the judgment are accepted at their face value (as we think they should be), Judge Sater's decision upon the actual motions to direct verdict has the same force as a like decision by Judge Hollister would have had, including the decision of whatever of fact is involved in the conclusion of non-assignability. Unless such is the result, the hearing before Judge Sater on the motions to direct verdict would have been more or less idle.

[5] Plaintiff contends, however, that at the time of the assignment to the plaintiff corporation the partnership had a right of action against defendant for breach of the warranty of quality, which right of action passed by the assignment of partnership assets generally, and thus that plaintiff was entitled to recover $10,800 in the original right of the partnership. Setting to one side the questions, not only of measure of damages, but the sufficiency of the evidence to support a finding of warranty, we think the record negatives the existence of such right of action in the partnership. The first machine was tagged for shipment to the agency but two days before the assignment to the plaintiff corporation. Indeed, the contract providing for organizing the corporation, and the conveyance thereto of all the partnership property and property rights, was made twelve days before the first machine was shipped. Thereafter the partnership until the assignment, and after that event the corporation plaintiff, continued to treat the contract as in full force. It is true that the partnership would not, by continuing to attempt to carry out the contract, necessarily waive an earlier occurring breach; but, assuming that a breach had then occurred, in view of what was done, we think defendant is right in its contention that the partnership had, at the time of the assignment, at most but an election of remedies, either to accept the breach and sue for damages, or disregard it and insist upon the performance of the contract.

The record indicates, we think, that the latter course was deliberately taken. This especially appears by the formal assignment to the corporation plaintiff of the contract itself as an existing contract; also by the fact that twice during the month of July the corporation advised defendant that the machines were at those dates working satisfactorily. While both parties were still operating under the contract, defendant refunded to plaintiff, at its request, the price paid for at least one of the two machines purchased from defendant. From the time of the assignment until defendant declared the contract canceled the corporation was insisting upon its wish to continue performance. During all that period the defendant was taking action in recognition of the contract, which it must be presumed it would not have taken, but for plaintiff's election to continue performance. We see no escape from the conclusion that the partnership before the assignment, and the corporation thereafter, effectually waived any breach of the asserted war-

ranty as occurring previous to the assignment. In its results the case is apparently a hard one for plaintiff. It seems to have attempted diligently to sell the machines, and to have failed because of its inability to make them work properly. That the machines, while constructed on correct mechanical principles, were, as first put out, delicately adjusted, liable constantly to get out of order, and difficult to operate successfully, is plain. Judge Sater thought there was fault on both sides. After the making of some changes in parts, and the discarding of some portions manufactured for defendant, the machine has eventually done good work. The case went off entirely upon the nonassignability of the contract; the merits otherwise were not passed upon below, and are not before us for decision.

Agreeing, as we do, with Judge Sater's conclusion of nonassignability, the judgment must be affirmed.